IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARY THERESA CAHILL,      ) | |
| ) | |
| Plaintiff,      ) | |
| ) | |
| vs.      ) | No.   08 C 255 |
| ) | |
| SMITH & NEPHEW, INC.,      ) | District Judge Darrah |
| ) | |
| Defendant.      ) | Magistrate Brown |

**PLAINTIFF'S MOTION TO COMPEL, EXTEND
DEADLINES AND FOR OTHER, APPROPRIATE RELIEF**

Plaintiff, Mary Theresa Cahill, by her undersigned attorney, moves the Court to order Defendant to fully respond to discovery requests, to extend discovery deadlines and for other, appropriate relief.

1. This matter involves allegations of a defective artificial hip implant that broke into two pieces, without any trauma, while implanted in Plaintiff. Due to Plaintiff's age (78), it has always been Plaintiff's intent to move this case to trial as rapidly as possible. In February of 2008, prior to the scheduled status hearing, the parties submitted a proposed discovery plan to the court, which provided as follows:

- Fact discovery closes July 31, 2008.

- Plaintiff's experts disclosures due August 31, 2008.

- Plaintiff's experts to be deposed by September 30, 2008.

- Defendant's experts to be disclosed by October 31, 2008.

- Defendant's experts to be deposed by November 30, 2008.

1

2. On February 20, the Court set the following schedule:

- **Discovery ordered closed on December 1, 2008.**
- **Dispositive Motions to be filed by December 11, 2008.**
- **Pre-trial Conference set for May 6, 2009.**
- **Jury trial set for May 11, 2009.**

3. Discovery in this matter was initially delayed, as Smith & Nephew, Inc. ("Smith & Nephew") advised that it was unable to determine the proper serial numbers and other information necessary to trace the hip implant, until after it received the hip and viewed it. That necessitated a protective order due to the fact that a third party, Rush North Shore Medical Center, had asserted custody over the hip. Once that was completed, Smith & Nephew responded to discovery on May 27, 2008. Copies of those responses are attached as Exhibit A. Of note, Smith & Nephew's response to request for production 11 was as follows:

> 11. Copies of any and all documents relating to any claim, complaint, report or incident similar to plaintiff's claim as referenced in the Complaint.
>
> **RESPONSE:** Objection. This request is not limited to the product involved in this case, not limited to the nature of the allegations in this case, not limited in time or in scope and is extremely overbroad and not reasonably calculated to lead to the discovery of admissible evidence. In addition, the request seeks information protected by the attorney-client privilege and work-product doctrines. Notwithstanding these objections, Smith & Nephew states that it has searched its records for the period of January 1, 2001 through May 2, 2008 and states that it has received no other lawsuits and one other claim alleging a fracture of Echelon Hip Model No. 7130413. The claim involved a patient in Ontario Canada.

Smith & Nephew's response to interrogatory 15 was as follows:

> 15. Identify any and all complaints, lawsuits, or claims submitted to you relating to the alleged defect(s) of similar makes and models of the hip prosthetic referenced in plaintiffs Complaint.

2

**ANSWER:** Objection. This request is not limited to the product involved in this case, not limited to the nature of the allegations in this case, not limited in time or in scope and is extremely overbroad and not reasonably calculated to lead to the discovery of admissible evidence. In addition, the request seeks information protected by the attorney-client privilege and work-product doctrines. Notwithstanding these objections, Smith & Nephew states that it has searched its records for the period of January 1, 2001 through May 2, 2008 and states that it has received no other lawsuits and one other claim alleging a fracture of Echelon Hip Model No. 7130413. The claim involved a patient in Ontario Canada.

4. Plaintiff believed there were certain deficiencies in the discovery responses and after fully reviewing the documents, on July 9, 2008, sent counsel for Smith & Nephew an e-mail, attached as Exhibit B. Specifically, Plaintiff requested additional information regarding similar model hips, back up documentation regarding one claim identified as being similar, information regarding Smith & Nephew's review of the hip, and an explanation as to why no e-mails had been produced regarding any issues. That was followed by a Rule 37.2 conference between Eric Stubenvoll and Anthony Monaco. Mr. Monaco confirmed that there had been no search for e-mails or apparently any other electronic data. He also advised that he would discuss the issues with Smith & Nephew and see what documents may exist.

5. On July 9, 2008, counsel for Plaintiff sent depositions notices for Smith & Nephew employees David Kelman, Dennis Watson and for a corporate representative to testify as to designated topics. Copies are attached as Exhibit C.

6. Despite the fact that discovery deadlines were approaching, counsel for Smith & Nephew advised that the witnesses were unavailable until later in August. Counsel for Smith & Nephew further advised that there was no need to depose Mr. Watson as all he did was sign the discovery responses. Counsel stated that Mr. Kelman could fully respond to any inquiries regarding the complete production of documents and the Rule 30(b)(6) topics.

7. Taking counsel at their word, counsel for Plaintiff prepared and filed an agreed motion to extend the discovery deadlines by 45 days so that the depositions could be completed in August. A copy of that motion is attached as Exhibit D. Due to the fact that Judge Darrah was unavailable, the motion was not heard. The deposition of Mr. Kelman was subsequently set for August 19, 2008 in Memphis, TN.

8. On August 15, 2008, at approximately 3:00 p.m., counsel for Plaintiff received supplemental responses to discovery requests. Those responses included documents identifying at least 50 other hip fractures. Copies are attached as Exhibit E. However, no back up documentation regarding those hip fractures was provided to identify the nature of any defect.

9. On August 19, 2008, counsel for Plaintiff deposed David Kelman in Memphis, TN. That deposition revealed, *inter alia,* the following:

   a. Smith & Nephew had not disclosed a virtually identical lawsuit in which it was found liable for over $1,000,000 in damages stemming from the fracture of a 13 mm hip stem, the same stem at issue in this lawsuit;

   b. Smith & Nephew had files that in some cases including analysis of stem fractures similar to the one in this case;

   c. Smith & Nephew had not produced documents regarding load testing on the stems;

   d. Smith & Nephew had not produced engineering change notices;

   e. Mr. Kelman had no role in preparing the discovery responses and could not advise as to what search was conducted or why clearly relevant documents had not been produced; and

   f. There are electronic documents such as e-mails and an electronic database of various documents, none of which have been produced.

10. Just how Smith & Nephew can claim its responses were made in good faith given its knowledge of the other stem fractures is something only Smith & Nephew can explain to this

4

Court. From Plaintiff's perspective, however, it appears that Smith & Nephew was clearly attempting to shield damaging information from Plaintiff in this case. The failure to search for e-mails was similarly improper.

11. That leaves Plaintiff in a difficult position. It has always been Plaintiff's goal to move this case to trial as quickly as possible given Plaintiff's age. However, discovery regarding the other hip fractures and other lawsuits that may exist clearly could be crucial to this case and is necessary before Plaintiff's expert discloses his opinions. Nonetheless, Plaintiff does not believe that she should be prejudiced as a result of Smith & Nephew's disregard of the Federal Rules of Civil Procedure.

12. As such, Plaintiff requests the following:

   a. That Smith & Nephew be ordered to conduct a full search, including a search of electronic records, and fully comply with all discovery requests within 14 days, which would include:

      1) Fully responding to requests to product 11;

      2) Fully answering interrogatory 15;

      3) Producing all engineering change notices;

      4) Producing all documents regarding testing or Echelon hips;

      5) Producing all complaint files regarding fractures of the stems of any Echelon hips, including the results of Smith & Nephew's internal investigation; and

      6) Conducting a search for and producing e-mails and other electronic data.

   b. That the time for completing fact discovery be extended to October 15, 2008;

   c. That Smith & Nephew be ordered to produce Mr. Kelman and Mr. Watson for deposition, in Chicago, on or before September 15, 2008;

   d. That the expert discovery schedule be modified so that Plaintiff can disclose her expert reports on or before November 15, 2008; and

e. That the schedule for completing expert discovery and the disclosure of Defendant's expert be modified to a period acceptable to the Court such that the May 2009 trial date is not affected.

13. Plaintiff further requests any other, additional relief that the Court deems appropriate given Smith & Nephew's disregard of the rules, including the costs and fees incurred in preparing this motion and re-deposing Mr. Kelman.

14. Pursuant to Local Rule 37.2, counsel for Plaintiff has had several conferences with counsel for Defendant, Kay Schichtel and Anthony Monaco, including conversation on August 21 and 22, 2008 with Ms. Schichtel. A copy of the most recent correspondence regarding the discovery disputes is attached as Exhibit F. While Ms. Schichtel has indicated she will search for and produce certain records which may obviate the need for the motion to compel, Plaintiff did not feel she would wait any longer to file the motion due to the urgent need to obtain the information and the need to modify discovery deadlines.

Wherefore, Plaintiff, Mary Theresa Cahill, requests that the Court order Smith & Nephew to fully respond to discovery, modify the discovery schedule so as not to prejudice the Plaintiff and for such other further relief as this Court deems proper.

MARY THERESA CAHILL

/s/ Eric D. Stubenvoll
*One of the attorneys for Plaintiff,*
*Mary Theresa Cahill*

Eric D. Stubenvoll
Fisher Kanaris, P.C.
200 S. Wacker Dr., 22nd Floor
Chicago, IL 60606
(312) 474-1400
(312) 474-1410 (fax)
ARDC# 6212104